THE STATE, EX REL. PIKE COUNTY REPUBLICAN EXECUTIVE COMMITTEE, *v.* BROWN, SECRETARY OF STATE.

[Cite as State, ex rel. Pike Cty. Republican Executive Commt., *v.* Brown (1989), 43 Ohio St. 3d 184.]

(No. 88-1816—Submitted March 28, 1989—Decided June 14, 1989.)

*Bannon, Howland & Dever, William L. Howland* and *Steven M. Willard,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Catherine M. Cola,* for respondent.

*Per Curiam.* This dispute must be

resolved by reference to R.C. 3501.07. That statute provides, in part:

"At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections, or within fifteen days after a vacancy occurs in the board, the county executive committee of the major political party entitled to the appointment may make and file a recommendation with the secretary of state for the appointment of a qualified elector. The secretary of state shall appoint such elector, unless he has reason to believe that the elector would not be a competent member of such board. *In such cases* the secretary of state shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may *either* recommend another elector *or* may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation. *If no such recommendation is made, the secretary of state shall make the appointment.*" (Emphasis added.)

In essence, the committee argues that Brown was required by R.C. 3501.07 to appoint Leist to fill the vacant board seat or, in the alternative, to set forth his reasons in writing for rejecting the committee's recommendation. The committee claims that Brown failed in the latter regard, and that he therefore abused his discretion by not appointing Leist. The committee further claims that mandamus will lie to correct the abuse and to compel Leist's appointment.

In his answer to the complaint, Brown contends that the committee's unsuccessful attempt for a writ of mandamus ordering Brower's appointment invalidated the Brower recommendation. The result, according to Brown, is that no recommendation was made, triggering the duty in R.C. 3501.07 for the Secretary of State to "make the appointment." Brown observes that he has, in fact, made such an appointment.

A close reading of R.C. 3501.07 supports Brown. Contrary to the committee's argument, nothing in the statute suggests that Brown was required to appoint Leist pursuant to the committee's second recommendation. Moreover, Brown was not required under the statute to explain why he rejected the Leist recommendation.

R.C. 3501.07 affords an executive committee only two alternatives when the Secretary of State rejects the nominee recommended within the specified period. If the committee's first choice is not appointed, the committee may *either* make another recommendation *or* it may file for a writ of mandamus. R.C. 3501.07 does not allow the committee to make a second recommendation *in addition* to filing for a writ of mandamus.

Here, the committee elected to file a mandamus action following the rejection of the Brower recommendation. R.C. 3501.07 does not authorize the committee, following an unsuccessful mandamus action, to return to the recommendation stage. Thus, nothing in R.C. 3501.07 required Brown to consider the Leist recommendation. Since Brown had no statutory duty to consider this recommendation, it follows that he had no duty to accept it, or to set forth his reasons for rejecting the recommended appointment.

Since R.C. 3501.07 does not require the Secretary of State to consider and accept the committee's recommendation of Leist, there is no act that we can properly compel through

the issuance of a writ of mandamus. Furthermore, because Brown had no duty to explain why he rejected the Leist recommendation in writing, we find that he did not abuse his discretion by rejecting the Leist recommendation in the way that he did. Accordingly, the committee's request for a writ of mandamus compelling Leist's appointment to the board of elections is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, H. BROWN and RESNICK, JJ., concur.

HOLMES, DOUGLAS and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. R.C. 3501.07 requires that in the event the Secretary of State declines to accept the recommendation of the county party executive committee filling a vacancy upon the board of elections, the Secretary of State must respond in writing, setting forth his reasons for such rejection. Here, the Secretary of State in his rejection letter to the Republican Executive Committee relating to Thomas C. Brower, the executive committee's first recommended replacement, appropriately set forth the reasons for rejection as provided by this section.

The Pike County Republican Executive Committee thereafter submitted the name of George Edward Leist, Jr. to the Secretary of State as the elector desiring to fill the vacancy. The Secretary of State sent a letter of rejection of the recommendation of Leist to the executive committee, but the letter did not set forth any specific reasons why Leist was being rejected. It is my view that the statute would require that such an explanation be given even though this was the second rejection.

The prior rejection of the first recommended appointee, and the prior dismissal of the mandamus action by this court, do not preclude the continued mandate of the section requiring the Secretary of State to set forth to the executive committee the reasons for this second rejection.

R.C. 3501.07 unambiguously grants authority to the Secretary of State to make an appointment to fill a vacancy on a county board of elections in *only two instances:* (1) where the county executive committee of the major political party entitled to the appointment makes and files a recommendation with the Secretary of State, and the secretary determines such nominee to be a qualified elector and a competent member of the board; or (2) where no such recommendation is made. Where, as here, a recommendation is made but rejected by the Secretary of State, with reasons given for such rejection, the statute clearly provides the major political party three alternative responses: (1) recommend another elector for consideration as above; (2) apply for a writ of mandamus to compel appointment of the previous nominee; or (3) do nothing and allow the secretary to make an appointment of his own choosing. *State, ex rel. Derwort,* v. *Hummel* (1946), 146 Ohio St. 653, 655, 33 O.O. 138, 139, 67 N.E. 2d 540, 542.

However, the statute is quite ambiguous as to both the procedure to be followed and as to the scope of the secretary's authority where, as here (1) the writ of mandamus concerning the first nominee is dismissed by this court, and (2) the second recommendation of the political party is *also* rejected by the secretary. The majority states that "R.C. 3501.07 does not allow the committee to make a second recommendation *in addition* to filing for a writ of mandamus." Although

that is certainly a correct statement of the law, it is irrelevant to the case before us. The Pike County Republican Executive Committee filed its second recommendation, nominating Edward Leist, Jr. *subsequent* to the denial of mandamus. Nothing in the statute prohibits such a second, or even a third, recommendation.

To allow the local political executive committee to recommend, in succession if necessary, qualified electors to fill a vacancy on the board of elections is the only consistent construction of this ambiguous statute which furthers the obvious twofold object of R.C. 3501.07: to ensure both the ability of a local political party to control and manage its affairs in its own best interests when filling a vacancy to which it, as a party, is entitled by statute, R.C. 3501.06, as well as authorizing the secretary to ensure that only persons who will be competent members of the local board of elections are appointed to fill such vacancies.[1] In *State, ex rel. O'Neil,* v. *Griffith* (1940), 136 Ohio St. 526, 530, 17 O.O. 160, 162, 27 N.E. 2d 142, 145, this court stated:

"* * * The Secretary of State is not concerned with the affairs of any political party or organization and has no part as such official in the political management or control of any party. He is concerned only in the functions to be performed by them through their duly constituted committees pursuant to the provisions of the statute in relation to the election machinery of the state. The official committee of the party may make certain recommendations in that regard. * * *"

As long, and as often, as the local executive committee exercises its right to make a recommendation, the secretary is bound by R.C. 3501.07 to either accept such recommendation or, where the secretary believes the nominee would not be a competent member of the board of elections, he "shall so state in writing to the chairman of such county executive committee, with *reasons* therefor." (Emphasis added.) To allow, as has the majority, the secretary to reject a nominee without stating a reason in conformance with the scope of his authority, *i.e.,* that the nominee would not be a competent board member, is contrary to the intent of R.C. 3501.07.

I would grant the writ.

DOUGLAS and WRIGHT, JJ., concur in the foregoing dissenting opinion.

---

[1] R.C. 1.49 provides: "If a statute is ambiguous, the court, in determining the intent of the legislature, may consider among other matters:

"(A) The object sought to be obtained * * *."