The State ex rel. Summit County Republican Party Executive Committee *v.* Brunner, Secy. of State.

[Cite as *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 118 Ohio St.3d 515, 2008-Ohio-2824.]

(No. 2008–0478—Submitted April 22, 2008—Decided June 16, 2008.)

**Per Curiam.**

I

{¶ 1} This is an original action for various extraordinary writs to (1) compel respondent, Secretary of State Jennifer Brunner ("Secretary"), to appoint Brian K. Daley to the Summit County Board of Elections as recommended by relator, Summit County Republican Party Executive Committee ("Committee"), (2) reject the Secretary's appointment of Donald Varian to serve on the board of elections, and (3) vacate all three-to-one board decisions in which Varian voted with the majority of the board.

{¶ 2} The statutory framework establishes a bipartisan composition of the state's boards of elections, which provides county executive committees of the two major political parties with the right to recommend appointees who shall be appointed by the secretary of state. The Secretary may reject the recommended appointee if she has reason to believe that the elector would not be a competent member of the board.

### First Recommendation

{¶ 3} Alex R. Arshinkoff is the chairman of the Committee and was a member of the Summit County Board of Elections from 1978 through February 29, 2008.

{¶ 4} At a meeting held on January 29, 2008, the Committee recommended that Secretary of State Brunner reappoint Arshinkoff to the board of elections for the four-year term beginning March 1, 2008. The Committee submitted to the Secretary on January 30 its recommendation and resolution authorizing the recommendation.

{¶ 5} Before January 30, Wayne Jones, a member of the board of elections and the finance chairman of the Summit County Democratic Party, advised the

Secretary that there were problems at the board and that she should not reappoint Arshinkoff to the board. The Secretary told Jones that she could not simply reject the recommendation to reappoint and that if there was evidence concerning Arshinkoff, Jones would have to send it to her.

{¶ 6} James J. Hardy is a regional liaison for the Secretary, and in that capacity, he serves as the Secretary's representative to several boards of elections, including the Summit County Board of Elections. Jones gave Hardy a packet of information concerning Arshinkoff that Hardy mailed to the Secretary's office. The packet included an anonymous, unsigned letter stating that Arshinkoff was not competent to serve as a board member and requesting that the Secretary not appoint him, as well as numerous exhibits referred to in the letter, including news articles, letters, affidavits, and a police report.

{¶ 7} By letter dated February 20, 2008, the Secretary rejected the Committee's recommendation of Arshinkoff for appointment to the board of elections. R.C. 3501.07 requires that the Secretary provide written reasons for rejecting a committee's recommendation, and in her letter, the Secretary concluded that Arshinkoff was not competent to continue in his position as board member because he had not demonstrated a temperament suited to competent service as a board of elections member, he had fostered a partisan atmosphere at the board, and he had attempted to intimidate judges and interfere with their official duties.

{¶ 8} The Secretary noted that the Committee could submit a recommendation for another elector for appointment to the board of elections but that it would have to do so by the close of business on February 29 because the Secretary had to make the appointment on March 1.

## Second Recommendation

{¶ 9} On February 26, 2008, the Committee held a meeting to consider its response to the Secretary's refusal to reappoint Arshinkoff to the board of elections. After the meeting, the Committee recommended to the Secretary that she appoint Brian K. Daley to the board of elections. Daley is a college graduate with a degree in business administration and is a certified internal auditor who has served several years in various managerial positions with different companies, including employment as the finance director for TRW Steering Wheel Systems, N.A., and as the controller for Gimbel's Department Stores. He also served as a member of the Hudson City Council from 2004 to 2007 and was president of the council from 2006 through 2007.

{¶ 10} At a voter forum in Summit County on February 27, Wayne Jones told the Secretary that she should reject Daley for some of the same reasons that she had rejected Arshinkoff. At the same forum, Hudson City Council President Mike Moran, a member of the Democratic Party, told the Secretary that he had

served on the council with Daley and that he had information that indicated that appointing Daley to the board would not remedy the problems she had previously detailed concerning Arshinkoff's tenure on the board.

{¶ 11} Hardy, the Secretary's regional liaison, received information about Daley from Moran and Daley's neighbors, Debra and William Vagas, as well as from other individuals. Hardy forwarded this information to the Secretary's office, and the Secretary reviewed it along with the materials submitted by the Committee and Daley. The evidence that the Secretary reviewed included an October 29, 2007 newspaper editorial endorsing Daley's opponent in a November 2007 city council race and a February 28, 2008 e-mail concerning Daley sent by Moran to Hardy.

{¶ 12} In a February 29, 2008 letter, the Secretary rejected the Committee's recommendation that Daley be appointed to the board of elections. The Secretary concluded that Daley would not be a competent board member because he did not possess the proper temperament, and his past behavior indicated that he would foster an unproductive work environment.

## Appointment of Donald Varian

{¶ 13} In the same letter in which she rejected the Committee's recommendation of Daley, the Secretary appointed Donald Varian to the board of elections for the four-year term beginning March 1, 2008. Varian is an attorney and a member of the Summit County Republican Party Central Committee. Varian has been a Republican and has participated in Republican Party activities and organizations for over 40 years.

{¶ 14} The Secretary admitted receiving Varian's name from Wayne Jones at the February 27 voter forum in response to her question about other viable Republican candidates if Daley was not an appropriate appointee. David M. Farrell, the Secretary's director of elections, then contacted Varian and asked him whether he was interested in serving on the board of elections. After Varian indicated his interest, Farrell asked him a series of questions based on the Secretary's questionnaire for prospective elections board members. Farrell then reported back to the Secretary about Varian, and the Secretary appointed him on February 29.

## Extraordinary–Writ Case

{¶ 15} On March 4, 2008, the Committee filed this action for (1) a writ of mandamus to compel the Secretary to appoint Daley to the board of elections as recommended by the Committee and to reject the Secretary's appointment of Varian to serve on the board of elections, (2) a writ of prohibition to prevent the Secretary from appointing Varian to serve on the board of elections, (3) a peremptory other writ to stay the Secretary's appointment of Varian pending the

adjudication of this case, and (4) an alternative writ finding that the Secretary lacked authority to reject the Committee's recommendation of Daley and to appoint Varian.

{¶ 16} The Committee captioned this case as an expedited election case under S.Ct.Prac.R. X(9) and filed a motion for the issuance of an emergency writ, stay, or other immediate relief. On that same day, we denied the motion and noted that this is not an expedited election case. *State ex rel. Summit Cty. Republican Party Executive Commt. v. Brunner*, 117 Ohio St.3d 1207, 2008-Ohio-904, 882 N.E.2d 918. We did, however, issue an abbreviated schedule for the presentation of evidence and briefs. Id. at ¶ 5. We subsequently denied the Secretary's motion for a protective order, motion in limine, and motion to require the Committee to file a videotaped deposition of the Secretary under seal.

{¶ 17} On March 5, the board of elections conducted an organizational meeting at which the newly formed board terminated the employment of seven employees. See, e.g., R.C. 3501.09, providing that biennially, within five days after appointments to the board of elections are made by the secretary of state, the board shall meet and organize.

{¶ 18} The parties have submitted their evidence and briefs.

{¶ 19} This cause is now before us for our consideration of the merits.

## II

{¶ 20} For reasons expressed in the concurring opinions, the court grants the writ of mandamus to compel the Secretary to appoint Daley to the board of elections in place of Varian. This renders moot the Committee's additional claims for a writ of mandamus to compel the Secretary to reject the appointment of Varian and for a writ of prohibition to prevent the Secretary from appointing Varian.

### Other Writ and Alternative Writ

{¶ 21} The court also denies the Committee's requests for an emergency other writ and an alternative writ pending the adjudication of this case. This case has now been resolved, and the court previously denied the Committee's motion for this relief.

{¶ 22} The Committee is also not entitled to writs to vacate certain decisions in which Varian participated, because he was at least a de facto officer while serving on the board, and his actions, when questioned collaterally, are as binding as those of an officer de jure. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 14, quoting *Ex Parte Strang* (1871), 21 Ohio St. 610, paragraph one of the syllabus (" '[t]he acts of an officer *de facto*, when questioned collaterally, are as binding as those of an officer *de jure* ' "). "To constitute an officer *de facto*

of a legally existing office it is not necessary that he should derive his appointment from one competent to invest him with a good title to the office. It is sufficient if he derives his appointment from one having colorable authority to appoint." *Strang,* paragraph two of the syllabus. Although the court now holds that the Secretary's appointment of Varian was improper because she should have appointed Daley, Varian held his office as a member of the board of elections under color of law, and the Committee is not entitled to an other writ to collaterally attack his decisions.

## Conclusion

{¶ 23} In summary, the court grants a writ of mandamus to compel Secretary of State Jennifer Brunner to appoint Brian K. Daley to the Summit County Board of Elections. The court denies the Committee's requests for an other writ or alternative writs and holds that the Committee's other claims are moot.

Judgment accordingly.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and PFEIFER and LANZINGER, JJ., dissent.

---

**O'DONNELL, J., concurring.**

{¶ 24} I concur with the judgment of the majority that a writ of mandamus should issue to compel the Secretary of State to vacate the appointment of Donald Varian and to appoint Brian Daley to the Summit County Board of Elections.

{¶ 25} This case calls for the court to interpret R.C. 3501.07, which prescribes not only the statutory rights of the county executive committee of a major political party entitled to the appointment of a member of the board of elections, but also the statutory duties of the secretary of state in making that appointment.

{¶ 26} In construing statutes, " 'our paramount concern is legislative intent.' " *State ex rel. Russo v. McDonnell,* 110 Ohio St.3d 144, 2006-Ohio-3459, 852 N.E.2d 145, ¶ 37, quoting *State ex rel. Musial v. N. Olmsted,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. It is well established that "[i]n order to determine this intent, we must ' "read words and phrases in context according to the rules of grammar and common usage." ' " Id., quoting *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.,* 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 27, quoting *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23; see also R.C. 1.42. And in *State v. Lowe,* 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 15, we affirmed that "a court may not add words to an unambiguous statute, but must apply the statute as

written." Id., citing *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52; see also *Columbus–Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8 ("it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used").

{¶ 27} R.C. 3501.07 states: "At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections * * *, the county executive committee of the major political party entitled to the appointment may make and file a recommendation with the secretary of state for the appointment of a qualified elector. The secretary of state shall appoint such elector, unless he has reason to believe that the elector would not be a competent member of such board. In such cases the secretary of state shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation. If no such recommendation is made, the secretary of state shall make the appointment."

{¶ 28} The plain language of this statute provides that the executive committee of the party entitled to the appointment may recommend a qualified elector for appointment to the board of elections and that the secretary of state shall appoint the elector unless the secretary has reason to believe that the elector would not be a competent board member. This court stated in *State ex rel. Pike Cty. Republican Executive Commt. v. Brown* (1989), 43 Ohio St.3d 184, 185, 540 N.E.2d 245, that "[i]f the committee's first choice is not appointed, the committee may either make another recommendation or it may file for a writ of mandamus." (Emphasis omitted.) Moreover, if the executive committee does not make a second recommendation, R.C. 3501.07 authorizes the secretary to make the appointment. See *State ex rel. Derwort v. Hummel* (1946), 146 Ohio St. 653, 655, 33 O.O. 138, 67 N.E.2d 540. Thus, an executive committee has three options when the secretary of state has rejected its first recommended elector: one, challenge the secretary of state's decision in mandamus; two, recommend a second elector; or three, do nothing and allow the secretary of state to appoint an elector to the board. *Brown,* 43 Ohio St.3d at 186, 540 N.E.2d 245 (Holmes, J., dissenting).

{¶ 29} In the instant case, the Committee recommended Alex Arshinkoff, but the Secretary rejected that recommendation and advised the Committee that it could submit another recommendation. In response, the Committee made a second recommendation, Brian Daley. The Secretary rejected Daley and sua

sponte appointed Donald Varian. Thus, the unique issue presented here is whether the Secretary of State had the authority to reject that second recommendation and, if so, whether the Secretary had the authority to make a sua sponte appointment. These issues are matters of first impression in this court.

{¶ 30} While R.C. 3501.07 expressly authorizes the secretary of state to reject an executive committee's *first* recommendation, it does not authorize the secretary to reject a committee's *second* recommendation. As this court has recognized, the secretary of state derives authority from the Ohio Constitution and the Revised Code. See, e.g., *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 40; *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912. But where the constitution and statutes are silent, the secretary lacks authority. See, generally, id. (Lundberg Stratton, J., concurring; O'Donnell, J., concurring in judgment).

{¶ 31} Thus, two problems exist with respect to the actions taken by the Secretary of State: one, the rejection of the Daley recommendation, because the statute does not authorize the Secretary to reject a *second* recommendation—the statute expressly authorizes the rejection of only a *first* recommendation; two, the Secretary appointed Varian without statutory authority because the Committee had recommended Daley, and the statute provides that "[i]*f no such recommendation is made*, the secretary of state shall make the appointment." (Emphasis added.) R.C. 3501.07.

{¶ 32} R.C. 3501.07 does not permit the secretary of state to continue to reject names of electors recommended by a political party's executive committee. The statute contemplates urgency and finality in the process of appointment for members of a county board of elections. I do not share the view that this statute allows for a perpetual process that permits the secretary of state to repeatedly reject committee recommendations. If that were an accurate interpretation of R.C. 3501.07, the secretary of state could conceivably continue to reject recommended appointees and cause a board of elections to have only three members. This situation demands finality, and construing the statute to permit a committee to enforce its rights with respect to its second recommendation of a qualified elector resolves the matter.

{¶ 33} Here, the secretary of state acted outside the authority of the statute by appointing Donald Varian; the limited statutory authorization for making such an appointment arises only when the executive committee fails to make a recommendation. It did not fail to make a recommendation in this case, and the action of the Secretary therefore is outside the scope of the express language of the statute.

{¶ 34} Allowing the secretary of state to repeatedly reject the recommendations filed by an executive committee enables the secretary of state to exercise

control over the affairs of a county political party and undermine the role that the legislature intended for the party's executive committee in the process of appointing members to a board of elections. Not only are the boards of elections bipartisan in composition (see R.C. 3501.06), but this court has recognized in *State ex rel. O'Neil v. Griffith* (1940), 136 Ohio St. 526, 530, 17 O.O. 160, 27 N.E.2d 142, that "[t]he Secretary of State is not concerned with the affairs of any political party or organization and has no part as such official in the political management or control of any party. He is concerned only in the functions to be performed by them through their duly constituted committees pursuant to the provisions of the statute in relation to the election machinery of the state. The official committee of the party may make certain recommendations in that regard."

{¶ 35} The procedure in R.C. 3501.07 is comparable to the gubernatorial appointment procedure for members of the board of directors of the Bureau of Workers' Compensation and for the commissioners of the Public Utilities Commission; the governor makes the appointments but *must select* from the list of names submitted by the pertinent nominating entity. See R.C. 4121.12 and 4901.02. Under these statutes, the appointing authority cannot select someone whose name has not been submitted by the nominating entity.

{¶ 36} I recognize that the secretary of state has a duty to appoint the members of the boards of elections (R.C. 3501.05(A)) and that R.C. 3501.07 expresses the legislature's intent to ensure the competency of board members. However, following the plain language of R.C. 3501.07 and requiring the secretary to appoint an executive committee's second recommendation does not undermine that legislative intent. And those appointed to the boards of elections are always subject to removal or suspension by the secretary of state. See R.C. 3501.16 ("The secretary of state may summarily remove or suspend any member of a board of elections * * * for neglect of duty, malfeasance, misfeasance, or nonfeasance in office, for any willful violation of Title XXXV of the Revised Code, or for any other good and sufficient cause"); See also *State ex rel. Hough v. Brown* (1977), 50 Ohio St.2d 329, 332, 4 O.O.3d 473, 364 N.E.2d 275.

{¶ 37} R.C. 3501.07 does not delegate authority to the secretary of state to either reject an executive committee's second recommendation or to make a sua sponte appointment in the face of a committee recommendation. When the Secretary of State rejected Arshinkoff, the Committee could have either filed a mandamus action in connection with the Arshinkoff recommendation or made a second recommendation. The Committee chose to make a second recommendation, and it recommended Brian Daley. This was done pursuant to statute and in accord with the written instruction from the Secretary advising that the Committee may submit a second recommendation.

{¶ 38} Here, the statute imposes the duty to appoint upon the secretary. But regarding a second recommendation, the statute does not specifically authorize the secretary to reject such a recommendation. Accordingly, if the secretary has a duty to appoint and lacks authority to reject, the logical inference is that the secretary must make that appointment.

{¶ 39} I pay no heed to Justice Pfeifer's coy argument that the statute does not specifically authorize a mandamus action for a second recommendation. Whenever a public officer fails to perform a statutory duty and an affected party has no adequate remedy at law, mandamus is an appropriate remedy. The Committee seeks to enforce its rights via mandamus because instead of appointing Daley, the Secretary rejected the Daley recommendation—without statutory authorization—and appointed Varian—again without statutory authorization.

{¶ 40} While I agree with the analysis of Justice Pfeifer that the secretary of state has a duty to appoint and the committee has a right to make a recommendation, I disagree with his choice to ignore the facts and the law that are counter to the outcome he desires. For example, he asserts the untimeliness of the Daley recommendation but ignores the statutory authority of the Committee to make a second recommendation and the letter from the Secretary advising the Committee that it could make such a recommendation.

{¶ 41} Justice Pfeifer further ignores the lack of statutory authority for the secretary to reject a second recommendation. Instead, he reads it into the statute, implying that it is there, but it is not.

{¶ 42} I also take exception to his mischaracterization of my opinion, suggesting that it converts the committee's right to make a recommendation into a right to appoint. The statute plainly fixes the appointment authority with the secretary of state. His analysis only confuses the issue.

{¶ 43} Moreover, the Chief Justice goes further and concludes that he would uphold the appointment of Varian to the board of elections. However, R.C. 3501.07 authorizes the secretary of state to make an appointment only "[i]f no such recommendation is made." (Emphasis added.) The Committee did not fail to make a recommendation. It recommended Daley. The statute does not say, "If the secretary of state rejects the second recommendation then the secretary may make the appointment." Accordingly, the Chief Justice has also ignored a significant and relevant portion of the statute that militates against the result he wishes to reach.

{¶ 44} In addition, I take strong exception to the Chief Justice's misstatement that my view is "a break from our previous decisions," ¶ 97. This is a matter of first impression in Ohio, as this court has never considered a case involving rejection of a second recommendation. Politely, there is no previous decision involving rejection of a second recommendation. All precedent in this field

concerns rejection of a *first* committee recommendation. If the legislature chooses to vest discretion in the secretary of state to reject a second recommendation, it may do so in the future. But it has not expressly done so in this statute.

{¶ 45} Finally, I think that the Chief Justice's mischaracterization of my view of this statute, implying that I have morphed the committee recommendation into a committee appointment, is disingenuous. The Chief Justice totally ignores the role the legislature envisioned for the executive committee of a political party to recommend electors for appointment. It is patently a two-step process, with the committee making the recommendation and the secretary of state making the appointment, each fulfilling important roles. While the legislature has not accorded the secretary of state discretion to reject a second recommendation, it has not divested the secretary of the duty to appoint. Because the secretary has that statutory duty, a committee may enforce its rights against the secretary by way of mandamus.

{¶ 46} Justice Pfeifer and Chief Justice Moyer correctly assert that R.C. 3501.07 is silent as to the rights of an executive committee when the secretary of state rejects its second recommendation. However, by focusing only on the lack of an express remedy for the Committee, the dissenters fail to recognize the threshold issue that the Secretary lacked express statutory authority to reject that second recommendation.

{¶ 47} In this case, the breach began with the secretary of state, not with the Committee. When the Secretary rejected the Arshinkoff recommendation, the Secretary's notification letter advised the Committee that it could submit a second recommendation. The Committee, in response, recommended Daley. It was the Secretary who rejected Daley—without express statutory authority to do so—and the Secretary who appointed Varian—in contravention of the plain language of the statute permitting the secretary to appoint only "[i]f no such recommendation is made."

{¶ 48} R.C. 3501.07 directs the secretary of state to appoint the elector recommended by the party's county executive committee. Here, when the Secretary failed to appoint Daley, who had been recommended by the Committee, and instead appointed Varian, the Committee properly utilized its remedy in mandamus to compel a public official to perform a statutory duty. It had no adequate remedy at law.

{¶ 49} Accordingly, I concur with the judgment of the majority to grant a writ of mandamus compelling the Secretary of State to vacate the Varian appointment and to appoint Daley to the Summit County Board of Elections.

{¶ 50} Finally, given the various interpretations of this statute apparent from the numerous opinions in this case, I would encourage members of the General

Assembly to promptly revisit this section of the Revised Code and to clarify its intent with respect to the rights of the members of an executive committee and the duties of the secretary of state with respect to appointments to the county boards of elections.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

**CUPP, J., concurring.**

{¶ 51} I write separately to explain why I believe that the correct construction of R.C. 3501.07, in light of its evident purpose of ensuring bipartisan composition and control of the county boards of election, supports granting the requested writ of mandamus.

I

{¶ 52} The other concurring opinion expresses a view strikingly different from the dissenters' view regarding R.C. 3501.07 and how it operates when a county executive party committee chooses not to challenge the secretary's rejection of the committee's first recommended appointee but, instead, recommends a second appointee. The other concurrence reads R.C. 3501.07 as requiring the secretary to appoint the committee's second recommended candidate because the statute does not expressly authorize the secretary to reject the second candidate. By contrast, the dissenters believe that R.C. 3501.07 does not authorize county political party executive committees to challenge the secretary's rejection of the committee's second recommended board candidate through mandamus—also because the statute does not so specify. In the dissenters' view, a committee may forgo a mandamus challenge of the secretary's rejection of its first recommended appointee and, instead, make a second recommendation, but the secretary has no duty to appoint the second recommended candidate.

{¶ 53} These diametrically opposed readings of the statute starkly illustrate its ambiguity regarding what process pertains after the secretary of state rejects a committee's first recommended appointee. Because the statute is ambiguous, the court may consider the "object sought to be attained" by R.C. 3501.07, and the "consequences of a particular construction," to determine the statute's proper meaning. R.C. 1.49(A) and (E).

A

{¶ 54} Although R.C. 3501.05(A) gives the secretary of state the power of "[a]ppoint[ing] all members of boards of elections," the conditions in R.C. 3501.06, as well as the selection process outlined in R.C. 3501.07, specifically circumscribe the secretary's choice. County boards of elections are made up of two members

from each of the major political parties. R.C. 3501.06 provides that the county boards of elections shall consist of four qualified electors of the county and that each even-numbered year, the secretary shall appoint two of the board members, "one of whom shall be from the political party which cast the highest number of votes for the office of governor at the most recent regular state election, and the other * * * from the political party which cast the next highest number of votes for the office of governor at such election." R.C. 3501.06 further specifies, "All vacancies filled for unexpired terms and all appointments to new terms shall be made from the political party to which the vacating or outgoing member belonged * * *."

{¶ 55} The evident purpose of R.C. 3501.06 in requiring an equal number of board members from each party is to ensure that the members from each party equally share in overseeing the operation of the county board. A further purpose for a bipartisan board with balanced party membership is to provide a check against partisan advantage or misconduct in the operation of the board and in the conduct of elections.

{¶ 56} The role of a county board of elections is to even-handedly and fairly implement the election laws as expressed in the Revised Code and the Administrative Code and by the directives and advisories of the secretary of state. See, e.g., R.C. 3501.05(B); R.C. 3501.11 (listing duties of the boards of elections). Among the board's duties are establishing election precincts, causing the polling places to be suitably provided with voting machines, marking devices, and other required supplies, and reviewing and certifying the sufficiency and validity of petitions and nominating papers. See R.C. 3501.11(A), (I), and (K). Board decisions must be made by majority of the four-member board. See R.C. 3501.11. Practically speaking, then, a board decision generally requires the concurrence of more than just the two members of one political party. Only if the board cannot reach a majority decision must the director or chairperson send the matter to the secretary of state to break the tie vote. See R.C. 3501.11(X).

{¶ 57} R.C. 3501.09, pertaining to the selection of board officers and the board chairperson, underscores the legislative purpose of ensuring bipartisan composition and control of the county boards. R.C. 3501.09 requires that the director and deputy director of a county board of elections be of opposite political parties (with each such officer having been nominated by a board member of the political party to which the person belongs) and that the board chairman "be selected from the members of the board of opposite politics to that of the director."

{¶ 58} The appointment process of board members set out in R.C. 3501.07 also reinforces that statutory purpose. R.C. 3501.07 gives the "county executive committee of the major political party *entitled to the appointment*" the right to "make and file a recommendation with the secretary of state for the appointment

of a qualified elector." (Emphasis added.) That statute specifically requires the secretary to appoint the person recommended ("The secretary of state *shall appoint* such elector * * * " (emphasis added) ). The secretary may be excused from her duty to appoint the recommended elector, but only for the reason that the person would not be a competent board member ("unless [the secretary] has reason to believe that the elector would not be a competent member of such board"). Consequently, in order not to appoint the person recommended by the committee, the secretary must have a reasonable belief that the person would not be a competent board member.

{¶ 59} To decline to appoint a committee's recommended board candidate, the secretary must notify the chairman of the county executive committee in writing, stating the secretary's reasons for that determination. The committee then has the option of challenging the secretary's decision in a mandamus case brought under R.C. 3501.07 or recommending another candidate for appointment to the board. In a mandamus case under R.C. 3501.07, the "burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation." If the county executive committee makes no such recommendation, the secretary shall make the appointment from the members of the appropriate political party.

{¶ 60} The purposes of R.C. 3501.07 and the related statutes mentioned above illuminate the context for properly construing the process for appointing board members.

B

{¶ 61} R.C. 3501.07 provides the following with regard to a mandamus action authorized by that section:

{¶ 62} "In such cases [i.e., when the secretary rejects a committee's recommendation because she has reason to believe that the recommended elector would not be a competent board member] the secretary of state shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation."

{¶ 63} In *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown* (1974), 39 Ohio St.2d 157, 68 O.O.2d 100, 314 N.E.2d 376, this court held that R.C. 3501.07 affords the secretary "broad discretion in determining whether recommended appointees are competent to be members of boards of elections." Id. at 160, 68 O.O.2d 100, 314 N.E.2d 376. In *Brown,* we held:

{¶ 64} "The enactment of Section 4785–9, General Code, and subsequently R.C. 3501.07, shifted the burden of proof of qualification in a mandamus action to those persons seeking the appointment.

{¶ 65} "This enactment, we believe, conforms to the general rule in mandamus actions that the writ will not issue to control the discretion of a public official vested with the power of appointment but may be invoked to remedy an abuse of such discretion." Id. at 161, 68 O.O.2d 100, 314 N.E.2d 376.

{¶ 66} Consistent with *Brown*, a committee must establish that the Secretary abused her discretion in rejecting the committee's recommended board appointee. However, in order to give full effect to the language of R.C. 3501.07 restricting the Secretary's authority to appoint, the statute may not be construed to bestow upon the Secretary unlimited discretion. Although the statute gives the Secretary the power to appoint board members, it gives the committee the right to recommend a candidate for appointment *and* to challenge in mandamus the Secretary's decision to reject its recommendation. Thus, the statute restricts to a substantial degree the Secretary's discretion in making an appointment.

{¶ 67} Additionally, *Brown* did not discuss in detail the evidence that could be presented and considered in a mandamus case. Consequently, briefly addressing the parties' arguments regarding evidence that may be considered in a mandamus action brought pursuant to R.C. 3501.07 is in order.

1

{¶ 68} First, contrary to relator's assertion, the statute does not entitle the committee or its recommended candidate to present evidence to the secretary of state before the mandamus action is filed. R.C. 3501.07 does not provide any process for presentation of evidence to the Secretary at the time of the appointment. Instead, the opportunity to present evidence is through the mandamus action. This court's cases have established that there is no basic inherent or constitutional right to hold public office, *State ex rel. Platz v. Mucci* (1967), 10 Ohio St.2d 60, 61, 39 O.O.2d 48, 225 N.E.2d 238, and that a prospective appointee has "no statutory right to appointment * * * under R.C. 3501.07 prior to approval by the Secretary of State," *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown,* 39 Ohio St.2d at 159, 68 O.O.2d 100, 314 N.E.2d 376. Accordingly, relator's right to present evidence regarding the recommended appointee's qualifications derives solely from R.C. 3501.07.

2

{¶ 69} Because R.C. 3501.07 does not require that the committee be allowed to present evidence to the secretary *before* the secretary issues her written statement with reasons for the rejection, I disagree with Chief Justice Moyer's view that in the mandamus case, this court is limited to reviewing the evidence that

was before the Secretary when she made her initial decision. The only opportunity for the committee to challenge the secretary of state's determination is through a mandamus action.

{¶ 70} Restricting the evidence in the mandamus action to what was before the Secretary when she made her initial decision also would be at odds with the statute's express placement on the committee of the burden of proving the candidate's qualifications. If so construed, the statute would simultaneously place on the committee the burden of proof while preventing it from introducing evidence to meet it. I do not believe that the statute sanctions such a contradictory result. See R.C. 1.47(C). Thus, I am unable to agree with Chief Justice Moyer's suggestion that the court should review the record for "some evidence," as it does in workers' compensation disability determinations, see, e.g., *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, because I do not believe that that type of review accords with the procedural framework in R.C. 3501.07. Under R.C. 3501.07, contrary to the situation in a workers' compensation disability determination, where there is an opportunity to develop a record in the proceeding below, a committee has no opportunity before the mandamus action to present its position or evidence.

{¶ 71} In my view, because the committee's right to present evidence is limited to the mandamus action, the committee may present evidence in the mandamus case that was not before the Secretary when she made her decision. This construction of R.C. 3501.07 comports with its placement of the burden of proof upon the committee to show the recommended person's qualifications. Although, in general, an elections board or official cannot be found to have abused its discretion based on evidence that was never presented to it, see, e.g., *State ex rel. Stoll v. Logan Cty. Bd. of Elections,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40, the specific procedure in R.C. 3501.07 actually contemplates that the committee will be able to present its evidence in the first instance in the mandamus action in order to meet its burden of proving the recommended candidate's qualifications. The Secretary, of course, may also submit the evidence upon which she relied when she rejected the committee's recommendation and such additional evidence as she may have to rebut the committee's evidence.

3

{¶ 72} As noted above, the duty of the county boards is to implement the election laws at the county level by applying the Revised Code, the Administrative Code, and the Secretary's directives and advisories relating to the election laws. Thus, a county board of elections is not a policy-making body. Its role is to implement the election laws to ensure fair and efficient elections. It is with these duties in mind that the Secretary must measure the competence of a person recommended by the committee for appointment to the board—whether the

person possesses the intelligence, capability, and experience to discharge the duties of a member of the county elections board.

{¶ 73} The evidence before the Secretary and before this court is that Daley, the person recommended by the Committee, possesses the intelligence, capability, and experience to discharge board duties. Consequently, on this measure of competence, there is no question that the Secretary could not have had a reasonable belief that Daley would have been other than a competent member of the board.

{¶ 74} The Secretary, however, argues that a person may be deemed not competent to be an elections board member notwithstanding the person's extensive management experience and ability to understand and apply election law and procedure. The Secretary argues that a person also may be deemed incompetent to serve on a board of elections because of his personality.

{¶ 75} Here, the Secretary's specific reason for rejecting Daley's appointment was her conclusion that he "does not possess the temperament required for competent service as a board of elections member." The Secretary's letter listed two descriptions of Daley that caused her concern: a newspaper article described Daley as an "arch ideologue" and a "bully," and a letter to the Secretary from a Hudson City Council member characterized Daley as, among other things, "very outspoken, never conced[ing] mistakes, and [trying] to intimidate others with a loud voice, and sometimes threats." The Secretary stated that she "cannot in good conscience appoint an individual to the Board whose past behavior predicts the fostering of [an] * * * unproductive environment." The incidents mentioned in the letter referred to Daley's alleged conduct while a member of Hudson City Council. (The Secretary also received correspondence alleging misuse of public office by Daley, which the Secretary refers to in her brief. However, the Secretary's letter rejecting Daley did not rely upon that allegation.)

{¶ 76} Although personality is at the remote end of what may reasonably be considered when determining competency, this court has, in the past, upheld the decision of a secretary of state not to reappoint a person to the board of elections when there was clear, documented evidence that personality conflicts between the board member and other board members and employees prevented the board from fully functioning. *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown,* 39 Ohio St.2d at 162, 68 O.O.2d 100, 314 N.E.2d 376. The personality conflicts in that case resulted in the candidate's "attempt[ing] to by-pass the board to undertake actions of dubious legality," "inject[ing] abrasive partisan bickering into the conduct of board business [by] calling frequent and unnecessary meetings on short notice," and "intru[ding] into administrative affairs, in violation of board policy regarding dealings with the staff." Id. The Secretary

contends that her stated reasons for rejecting Daley mirror those upheld in *Brown*.

{¶ 77} In *Brown*, however, the candidate had already served on the board and had demonstrated through actions documented in the board's minutes that his service on the board was detrimental to its proper and efficient functioning. Id. at 163, 68 O.O.2d 100, 314 N.E.2d 376. This is in sharp contrast to the Secretary's claim of incompetence due to personality in this case. Here, Daley has never served on the board of elections. The claims of personality clash were made by political opponents, or they were contained in an election-endorsement editorial or other newspaper articles. And the claims pertained to Daley's service on an elected municipal council, which is a public-policy-making legislative body and thus is far different from a county elections board, which is an administrative body charged with implementing state election laws and procedures.

{¶ 78} In *Brown*, the issue was disruptive conduct that was well documented and directly involved the body for which the appointment was being made. Here, the Secretary's conclusion that Daley is incompetent to serve on the elections board, a position that he has never held, because of a possible abrasive personality (a point on which relator provides substantial evidence to the contrary), rises to no more than speculation. The statute giving the Secretary the authority to reject a committee recommendation, however, requires more than speculation. Cf. *State ex rel. Cuyahoga Cty. Democratic Party Executive Commt. v. Taft* (1993), 67 Ohio St.3d 1, 2, 615 N.E.2d 615 ("when the Secretary of State rejects a recommended appointee for failure to comply with the campaign finance laws, *suspected violations* of these requirements will not, standing alone, justify the conclusion that the appointee is incompetent to serve" (emphasis added) ). The statute requires a *reasonable* belief that the person is incompetent to serve on a board of elections.

{¶ 79} Consequently, I find that the Secretary has exceeded her statutory discretion by rejecting the Committee's recommendation of Daley for appointment to the county board of elections. The Secretary's action of rejecting the Committee's recommendation on the basis of the candidate's personality and the Secretary's prediction that it would "foster[ ] [an] * * * unproductive environment" at the board, when the person rejected had not previously served on the board of elections, was not reasonable.

{¶ 80} Accordingly, I conclude that the Secretary abused her discretion and that the requested writ of mandamus to appoint Daley to the Summit County Board of Elections should be granted.

## II

{¶ 81} The view of the dissenters that R.C. 3501.07 does not permit a committee to bring a mandamus action to challenge the Secretary's rejection of its second recommended appointee for the board of elections requires some additional analysis.

{¶ 82} The Secretary argues, and the dissenters agree, that R.C. 3501.07 does not permit the Committee to bring this mandamus action challenging the Secretary's failure to appoint the Committee's *second* recommended candidate for a board member position. The Secretary contends that R.C. 3501.07 permits a committee to bring an action in mandamus in this court only after the secretary rejects the committee's *first* recommended appointee. The Secretary also argues, in the alternative, that the Committee failed to recommend Daley within the time limit specified in the statute, a limit, the Secretary contends, that is "not more than sixty nor less than fifteen days before the expiration date of the term of office" of the outgoing board member. See R.C. 3501.07. I will address the first of these arguments first.

{¶ 83} As noted above, R.C. 3501.07 does not specifically set forth the process that is to apply if a committee submits a second recommendation rather than filing a mandamus action to challenge the Secretary's rejection of the committee's first recommended candidate. It is true that "[w]e cannot create the legal duty enforceable in mandamus." *State ex rel. Lewis v. Rolston,* 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 22. It is equally true, however, that "courts in mandamus actions have a duty to construe constitutions, charters, and statutes, if necessary, and thereafter evaluate whether the relator has established the required clear legal right and clear legal duty." *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 125, 698 N.E.2d 987; see also *State ex rel. Tomino v. Brown* (1989), 47 Ohio St.3d 119, 120, 549 N.E.2d 505 ("we will construe constitutions as well as statutes as necessary to discover whether the duty exists"). It is also our duty "to resolve all doubts concerning the legal interpretation of these provisions." *Fattlar,* 83 Ohio St.3d at 125, 698 N.E.2d 987; see also *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785 (in mandamus cases, a court must resolve any doubts and declare the duty imposed by a statute after its misgivings concerning the intent and meaning of the statute have been eliminated).

## A

{¶ 84} The statute at issue here, R.C. 3501.07, provides:

{¶ 85} "At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections, or within fifteen days after a vacancy occurs in the board, the county executive

committee of the major political party entitled to the appointment may make and file a recommendation with the secretary of state for the appointment of a qualified elector. The secretary of state shall appoint such elector, unless he has reason to believe that the elector would not be a competent member of such board. In such cases the secretary of state shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making the recommendation. If no such recommendation is made, the secretary of state shall make the appointment."

{¶ 86} As discussed above, R.C. 3501.07 and its related statutes evince a purpose to promote equal participation by both major political parties in operating the county boards of elections. Other evident purposes of R.C. 3501.07 are to ensure that a county party executive committee has the right to recommend the appointee for that party and that the person so nominated is competent to serve as a board member. Cf. *State ex rel. Pike Cty. Republican Executive Commt. v. Brown* (1989), 43 Ohio St.3d 184, 187, 540 N.E.2d 245 (Holmes, J., dissenting). In light of those purposes, the statute is properly construed to afford a committee the ability to challenge the Secretary's rejection of the committee's *second* recommended board candidate as well as to challenge rejection of its *first* recommended candidate.

{¶ 87} To foreclose a mandamus challenge at this juncture would remove both of the statutory remedies granted to a political party executive committee to ensure meaningful participation in the selection of the board member to which that party is entitled: challenging the Secretary's rejection of its second candidate or recommending someone else from its party to serve as a board member for that party. Such a construction of R.C. 3501.07 would undercut a committee's right to recommend an elections board appointee, as contemplated by R.C. 3501.06 and 3501.07. Cf. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 41 (courts have a duty to construe statutes to avoid unreasonable or absurd results); R.C. 1.47(C); R.C. 1.49(A) and (E). That concern does not appear to be merely hypothetical. Here, for instance, the Secretary ultimately appointed a Republican board member whom the finance chair of the local Democratic Party had suggested to the Secretary.

{¶ 88} The dissenters urge that *State ex rel. Pike Cty. Republican Executive Commt. v. Brown*, 43 Ohio St.3d 184, 540 N.E.2d 245, construed R.C. 3501.07 as ensuring nothing more than a fair hearing in mandamus on the Secretary's refusal to appoint the committee's *first* recommended candidate. The dissenters

conclude that if the committee chooses instead to recommend a second candidate, the statute does not impose a duty on the secretary to appoint that person, and the committee has no right to file a mandamus to challenge the rejection of its second candidate. But *Pike Cty.* does not so hold, and neither does R.C. 3501.07 expressly provide for such a result.

{¶ 89} In *Pike Cty.*, 43 Ohio St.3d 184, 540 N.E.2d 245, the executive committee filed a mandamus case to challenge the Secretary's rejection of the committee's second recommended appointee, after the committee had unsuccessfully challenged in mandamus the rejection of its first recommendation. This court concluded that when a committee's first choice is not appointed, the committee may either make another recommendation or file for a writ of mandamus. This court held that "R.C. 3501.07 does not allow the committee to make a second recommendation *in addition* to filing for a writ of mandamus." (Emphasis sic.) Id. at 185, 540 N.E.2d 245. This court explained: "R.C. 3501.07 does not authorize the committee, *following an unsuccessful mandamus action,* to return to the recommendation stage. Thus, nothing in R.C. 3501.07 required Brown to consider the Leist [second] recommendation." (Emphasis added.) Id.

{¶ 90} Thus, *Pike Cty.* held that once a local party executive committee unsuccessfully challenges in mandamus the Secretary's rejection of its initial candidate, the committee cannot then make a second recommendation. In this case, by contrast, the Committee did not file a mandamus action to challenge the Secretary's rejection of its first recommendation, but instead recommended a second person. *Pike Cty.* does not foreclose the Committee's (first) mandamus action here.

{¶ 91} Neither does the language of R.C. 3501.07 expressly provide that a party executive committee is limited to challenging the rejection of its first recommended appointee in mandamus or making a second recommendation with no resort to mandamus if the second recommendation is rejected. In light of the purpose of R.C. 3501.07 and its related statutes, I believe that the better reading of the statute is that it permits a mandamus challenge to the Secretary's rejection of a committee's second recommended board appointee.

B

{¶ 92} Also misplaced is the Secretary's second argument—that the Committee's second recommendation was untimely because it was made less than 15 days before the end of the outgoing board member's term. To be sure, the statute provides that a committee may make a recommendation at a meeting held "not more than sixty nor less than fifteen days before the expiration date of" the term of the board member to be replaced, or "within fifteen days after a vacancy occurs in the board." That time frame relates to the committee's initial recommendation. However, the statute is silent regarding the timing of any second

recommendation, just as it was silent regarding the issue whether rejection of that recommendation may be challenged in mandamus.

{¶ 93} The Secretary's proposed construction of the statute would allow the Secretary to delay ruling on an initial recommendation until within 14 days of the expiration of the board member's term and thereby eliminate any right a committee would otherwise have under R.C. 3501.07 to make a second recommendation. Although there is no evidence that the Secretary deliberately delayed rejecting the Committee's first appointment until after 15 days before the term was to expire,[1] a reading that creates the potential for an end run to eliminate a committee's statutory right to recommend a board member is to be avoided. In fact, the Secretary's letter advising the Committee of her rejection of its first recommended appointee told the Committee it could submit another name before the close of business on February 29, the day before the board member's term was to end. Additionally, the Secretary did not reject the Committee's recommendation of Daley due to any purported untimeliness, but for other stated reasons.

{¶ 94} For all of these reasons, I would hold that upon the Secretary's rejection of a committee's second recommendation of a board of elections member, the Committee has the right under R.C. 3501.07 to bring a mandamus action in the Supreme Court of Ohio to challenge the Secretary's rejection of that second recommendation.

O'CONNOR, J., concurs in the foregoing opinion.

———————

MOYER, C.J., dissenting.

{¶ 95} I respectfully dissent from the per curiam decision to grant the writ of mandamus to compel the secretary of state to appoint Brian Daley to the Summit County Board of Elections. As support for this decision, the majority relies upon two separate concurring opinions. I disagree with both opinions and address them in turn.

{¶ 96} In his concurring opinion, Justice O'Donnell takes an overly strict view of R.C. 3501.07, one that eliminates the secretary of state's statutory discretion to make appointments. Under his interpretation, once a county political executive committee recommends an elector to serve on a local board of elections, the secretary of state must either appoint the elector or reject him or her as incompetent; if the secretary rejects the elector, the executive committee can either challenge the decision in mandamus or recommend a second elector.

———————

1. The Secretary's rejection of the first recommendation was made on February 20, less than 15 days before the end of the term.

According to Justice O'Donnell, if the executive committee chooses to recommend a second elector, the secretary of state has no discretion to reject that recommendation, and must therefore appoint the elector regardless of his or her competence. Justice O'Donnell then states that the secretary of state's decision to reject the second recommendation in this case was ultra vires conduct, and that the relators are entitled to mandamus to reverse it.

{¶ 97} This reading ignores the statutory context of R.C. 3501.07 that Justice Pfeifer's dissenting opinion discusses in greater detail. See R.C. 3501.05(A) (giving the secretary of state alone the power to make appointments to boards of elections); R.C. 3501.06 (stating that individuals appointed by the secretary serve as her representatives). It also represents a break from our previous decisions, which granted the secretary of state broad discretion in appointments to local boards of elections. See, e.g., *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown* (1974), 39 Ohio St.2d 157, 161, 68 O.O.2d 100, 314 N.E.2d 376 ("We think that [R.C. 3501.07] clearly empowers the Secretary of State to exercise his discretion in determining the qualifications and competency of persons recommended for appointment").

{¶ 98} Justice O'Donnell's interpretation would greatly diminish the appointment power of the secretary of state and eliminate her ability to determine the competency of recommended electors in the circumstances presented by this case. It would, in effect, change the county political executive committee's statutory right to "make and file *a recommendation* with the secretary of state for the appointment of a qualified elector" into a right to make an appointment on its own. (Emphasis added.) R.C. 3501.07. This interpretation creates an absurd result, which we should avoid in construing statutes. See *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 56. I therefore disagree with the reasoning in his opinion.

{¶ 99} The more appropriate reading of the statute is the one advanced by Justice Pfeifer. Based on the well-reasoned analysis in his dissent, I agree that R.C. 3501.07 does not authorize county political executive committees to challenge the secretary of state's rejection of a second recommendation for a member of a local board of elections through mandamus. Because "[w]e cannot create the legal duty enforceable in mandamus," *State ex rel. Lewis v. Rolston*, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 22, the relators have no right to bring such an action to challenge the secretary of state's decision on their second recommendation. I therefore join Justice Pfeifer's dissenting opinion. Justice Cupp arrives at the opposite conclusion and would hold that an executive committee may bring a mandamus action to challenge the secretary's rejection of its second recommendation, but his approach uncharacteristically writes provisions into the statute that were not adopted by the General Assembly.

{¶ 100} However, even if the relators could seek mandamus relief under R.C. 3501.07, a writ should not be granted. I write separately to discuss the standard of review for mandamus actions filed pursuant to R.C. 3501.07 and the reason this standard of review would lead to the inevitable conclusion that mandamus relief is inappropriate in these circumstances.

### The Standard of Review

{¶ 101} The standard of review in a mandamus action filed pursuant to R.C. 3501.07 is well-settled law:

{¶ 102} "The enactment of Section 4785–9, General Code, and subsequently R.C. 3501.07, shifted the burden of proof of qualification in a mandamus action to those persons seeking the appointment [to a board of elections].

{¶ 103} "This enactment, we believe, conforms to the general rule in mandamus actions that the writ will not issue to control the discretion of a public official vested with the power of appointment but may be invoked to remedy an abuse of such discretion." *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown* (1974), 39 Ohio St.2d 157, 161, 68 O.O.2d 100, 314 N.E.2d 376, citing, inter alia, *State ex rel. Coen v. Indus. Comm.* (1933), 126 Ohio St. 550, 186 N.E. 398.

{¶ 104} The abuse-of-discretion standard has been applied in reviewing public officials' decisions for more than 100 years, see *State ex rel. Ins. Co. v. Moore* (1884), 42 Ohio St. 103, 108; it has been applied specifically to mandamus actions filed under R.C. 3501.07 for over 30 years, see *Brown*, 39 Ohio St.2d at 161, 68 O.O.2d 100, 314 N.E.2d 376; see also *State ex rel. Cuyahoga Cty. Democratic Party Executive Commt. v. Taft* (1993), 67 Ohio St.3d 1, 2, 615 N.E.2d 615 (reaffirming that the abuse-of-discretion standard applies in these circumstances). While R.C. 3501.07 places the burden of proof in a mandamus action on the executive committee, we explicitly held in *Brown* that this burden-shifting does not change the fact that an abuse-of-discretion standard applies to a review of the secretary of state's decision. *Brown*, 39 Ohio St.2d at 161, 68 O.O.2d 100, 314 N.E.2d 376.

{¶ 105} The abuse-of-discretion standard affords great deference to the secretary of state's decision. "An abuse of discretion * * * must be more than an error of law or an error of judgment. It means discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Brown*, 39 Ohio St.2d at 161, 68 O.O.2d 100, 314 N.E.2d 376. " 'Before the judiciary will interfere in such a case, it must clearly appear that such officer has so far departed from the line of his duty under the law that it can be said he has in fact so far abused such discretion that he has neglected or refused to exercise any discretion.' " Id. at 161–162, 68 O.O.2d 100, 314 N.E.2d 376, quoting *State ex rel. Armstrong v. Davey* (1935), 130 Ohio St. 160, 163, 4 O.O. 38, 198 N.E. 180. It is

important that our review of the conduct of public officials in the performance of their duties not reflect our personal opinions regarding the desirability of the decision produced by a reasonable exercise of their discretion, nor should it be our purpose to weigh the credibility of the evidence of competence submitted to the secretary.

{¶ 106} Public officials, from high-ranking officers such as the secretary of state to trial court judges, are elected because the voters of this state trust them to use their discretion for the public good. "Wrong" decisions may occasionally be made and go uncorrected, but that is the reality of the abuse-of-discretion standard. As this court stated in 1884, "the principle is too firmly established to be questioned, that where a public officer is invested with discretionary power concerning the performance of a public duty required at his hands, or, wherever in determining the course of official action he is called upon to use official judgment and discretion, his exercise of them, in the absence of bad faith, fraud and gross abuse of discretion, will not be controlled or directed by mandamus." *Moore*, 42 Ohio St. at 108.

## Application of the Standard of Review

{¶ 107} Although I agree with Justice Pfeifer that we need not examine the evidence in this case because the Committee does not have a right to seek mandamus in these circumstances, I will apply the standard of review to this case for purposes of illustration.

{¶ 108} R.C. 3501.07 permits the secretary of state to reject a recommendation for a local board of elections if the Secretary "has reason to believe that the elector would not be a competent member of such board." The statute does not define what evidence is relevant in a mandamus review of the Secretary's exercise of her discretion. However, as Justice Cupp admits, an elections board or official generally cannot be found to have abused its discretion based on evidence that was not presented to it. See *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40. I would therefore limit this review to the evidence before the secretary of state when she made her initial decision; we use this form of limited evidentiary review in mandamus cases challenging workers' compensation disability determinations. See *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936 (stating that the party challenging the disability determination bears the burden of demonstrating an abuse of discretion, and "abuse of discretion has been repeatedly defined as a showing that the * * * decision was rendered without some evidence to support it"). I would likewise uphold the secretary's determination so long as there was some evidence in the record before her to support her conclusion.

{¶ 109} In her initial decision, the Secretary cited an editorial from the Akron Beacon Journal and an e-mail from a city council member to support her conclusion that Brian Daley was unsuitable to assume a position on the Summit County Board of Elections. The editorial describes Daley as a "bully" and an "arch ideologue in a city better served by practical problem-solvers," someone whose approach to leadership, "in style and substance, is not suited to the political realities of Hudson" and "clashes sharply with the nonpartisan tradition of governing." The editorial concludes that "Daley has poisoned the political climate in Hudson," and that he is "a harmful distraction" that had "divert[ed] the city from addressing key priorities." The e-mail, from someone who served on city council with Daley, raised similar concerns. "[Daley is] * * * very outspoken, never concedes mistakes, and he tries to intimidate others with a loud voice, and sometimes threats. * * * There are many other instances of [Daley's] overbearing personality being used by him in lieu of reasoned discussion to try and get his way. * * * [Daley] is thought of as a bully by many."

{¶ 110} The structure of boards of elections raises to high importance the ability and inclination of board members to be able to work well with other members of the board and with board personnel. While an abuse of discretion may exist if the Secretary relies on improper grounds in making her decision, see, e.g., *Taft*, 67 Ohio St.3d at 2, 615 N.E.2d 615 (holding that suspected violations of campaign-finance laws are not sufficient evidence of incompetence), "personality conflicts" and instances of "abrasive partisan bickering" are legitimate reasons to declare a person incompetent for the position. *Brown*, 39 Ohio St.2d at 162–163, 68 O.O.2d 100, 314 N.E.2d 376. "Although those reasons reflect to a great extent the Secretary of State's personal views as to the requirements of a competent board member of the board of elections, that determination is within the discretion granted the Secretary of State." Id. at 163, 68 O.O.2d 100, 314 N.E.2d 376. I see nothing differentiating this case from that case; there is "some evidence" in the record to support the Secretary's decision, and thus she did not abuse her discretion in rejecting the recommendation.

{¶ 111} In his concurring opinion, Justice Cupp relies on additional evidence regarding Daley's competence presented by the Committee to support his decision to vote for granting the writ of mandamus. He reasons that the Committee must be given the chance to develop the record beyond what the secretary of state initially considered so that it can meet the burden of proof placed upon it under R.C. 3501.07. I disagree with this conclusion for the reasons set forth above.

{¶ 112} However, if we are to consider additional evidence, there is no apparent abuse of discretion in view of the additional evidence that both parties submitted. The Committee presented evidence that generally refutes the ideas

that Daley acts unfairly and disrespectfully toward others, including affidavits from other council members and various individuals that worked with Daley in different capacities over the years and found him to be helpful, fair, respectful, cooperative, and an able leader. The secretary of state proffered further statements about Daley's personality issues, including an affidavit from another former council member that described Daley as arrogant and condescending, as well as evidence that Daley may have used his council position for personal gain.

{¶ 113} Even considering this additional evidence, this case would amount to a difference of opinion as to whether Daley's personality traits would have deleterious effects on the work of the Summit County Board of Elections. In such circumstances, where evidence exists to support both conclusions, neither a clear legal right to the appointment nor a clear legal duty to appoint the recommended person is established, and we should defer to the secretary of state's discretion. See *Brown*, 39 Ohio St.2d at 161–162, 68 O.O.2d 100, 314 N.E.2d 376; see also *State ex rel. Tarpy v. Bd. of Edn. of Washington Court House* (1949), 151 Ohio St. 81, 38 O.O 531, 84 N.E.2d 276, syllabus.

{¶ 114} The fact that Daley had never served on the local board of elections does not change this fact. *Brown* does not state that an individual may be deemed incompetent only for personality conflicts exhibited in prior board of elections service; personality issues that arise at any time may provide sufficient evidence of incompetence. *Brown*, 39 Ohio St.2d at 162–163, 68 O.O.2d 100, 314 N.E.2d 376.

{¶ 115} Therefore, despite the somewhat unusual circumstances in which the secretary of state appointed Varian, if I were applying the abuse-of-discretion standard to this case, I would hold that the secretary of state did not abuse her discretion in rejecting the recommendation to appoint Daley to the Summit County Board of Elections, and I would deny the writ of mandamus and uphold the Secretary's appointment of Donald Varian to the Summit County Board of Elections.

LANZINGER, J., concurs in the foregoing opinion.

---

PFEIFER, J., dissenting.

{¶ 116} Ohioans learn something new today: two wrongs can make a writ. Through a unique bit of judicial alchemy, two unrelated concurring opinions that were each able to garner the support of only one other justice have combined to produce four votes to grant a writ of mandamus. A majority of this court thus announces the granting of a writ of mandamus, but cannot exactly put its finger on why; it grants a writ of mandamus on the basis of an *unclear* legal duty. Especially disturbing is the fact that one of the concurrences is based upon a

theory of relief so novel that the relator never raised it. Thus, the majority grants the writ on the basis of an argument never raised and to which the respondent never had an opportunity to respond.

## Unavailability of Mandamus Without Legislative Authority

{¶ 117} When this court grants a writ of mandamus, as in this instance, it commands a public official in another branch of government to perform a certain act. We do not undertake such serious business based upon this court's view of what the law *ought* to be. To be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 18.

{¶ 118} There can be no mandamus without a clear legal duty, and this court does not have the power to establish the legal duty enforceable in mandamus. *State ex rel. Lewis v. Rolston*, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 22. "It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the *legislative branch of government*, and courts are not authorized to create the legal duty enforceable in mandamus." (Emphasis sic.) *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18.

{¶ 119} This court is powerless to grant a writ of mandamus in this case because the General Assembly has placed upon the secretary of state no legal duty to do what the relator seeks. Correspondingly, the General Assembly has granted the relator no legal right to the relief it seeks. Nothing in R.C. 3501.07 requires the secretary of state to appoint to the county elections board the second person recommended by the county executive committee of the political party entitled to the appointment, nor does that statute confer a right on the committee to file a mandamus action in this court to challenge the secretary's rejection of a successive recommendation. Even accepting the view that R.C. 3501.07 provides a repeating procedure for successive committee recommendations, the statute does not impose any duty on the secretary of state to appoint an elector recommended by a political party's county executive committee when the committee's recommendation is not made and filed within the time specified by the statute.

## The Powers and Duties of the Secretary of State

{¶ 120} R.C. 3501.07 is the focus of this case, but we must examine R.C. 3501.07 with other statutes in pari materia.

{¶ 121} By statute, only the secretary of state has the power to make appointments to county boards of elections. R.C. 3501.05 provides:

{¶ 122} "The secretary of state shall do all of the following:

{¶ 123} "(A) Appoint all members of boards of elections."

{¶ 124} Pursuant to R.C. 3501.06, the members of the boards of elections are appointed by the secretary of state and serve as the secretary of state's representatives. The only absolute limitation on her power to appoint is that each four-member board must consist of two members from each major political party:

{¶ 125} "There shall be in each county of the state a board of elections consisting of four qualified electors of the county, *who shall be appointed by the secretary of state, as the secretary's representatives,* to serve for the term of four years. On the first day of March in even-numbered years the secretary of state shall appoint two of such board members, one of whom shall be from the political party which cast the highest number of votes for the office of governor at the most recent regular state election, and the other shall be from the political party which cast the next highest number of votes for the office of governor at such election." (Emphasis added.) R.C. 3501.06.

{¶ 126} The secretary of state's appointments to the boards of elections must be equally divided between the two major political parties, pursuant to R.C. 3501.06. Thus, each party is *entitled* to two spots on the board of elections, but the authority to *make* the appointments belongs to the secretary of state. R.C. 3501.05.

{¶ 127} Moreover, in the process of appointing elections board members, time is of the essence. R.C. 3501.06 and 3501.07 contemplate an accelerated appointment process. The secretary of state must appoint 176 persons to boards of elections by March 1 in even-numbered years. R.C. 3501.06. Within five days after the secretary's appointments are made, the members must meet and reorganize. R.C. 3501.09. "An analysis of R.C. 3501.07 reveals that the General Assembly in providing for the appointment of recommended electors to boards of elections recognized that such decisions should be finalized as quickly as possible, so that the work of the board may not be impeded, and that there be four members of the board acting in their official capacity at all times." *State ex rel. Democratic Executive Commt. of Lucas Cty. v. Brown* (1974), 39 Ohio St.2d 157, 164-165, 68 O.O.2d 100, 314 N.E.2d 376 (Stern, J., concurring).

{¶ 128} Any interpretation of R.C. 3501.07 must take into account the statutory sections surrounding it. Those statutes establish that the power to appoint the secretary of state's own representatives lies with the secretary of state, not local party officials, that equal representation is achieved by requiring the secretary of

state to appoint an equal number of members from each of the two leading political parties, and that the Secretary should make those appointments in an expeditious manner.

**Limits to Political Party Executive Committee's Authority and Recourse under R.C. 3501.07**

{¶ 129} The relator must establish a clear legal right to its requested relief. R.C. 3501.07 gives the county executive committees of the major political parties the authority to recommend to the secretary of state whom she should appoint to the slots each political party is entitled to on boards of election. However, the appointments are not automatic upon the recommendations; the secretary of state may refuse to appoint a recommended elector if she believes that the recommended elector would not be a competent board member.

{¶ 130} Further, the participation of the county executive committee in the appointment process is *permissive*, not mandatory, under R.C. 3501.07; the statute states that "the county executive committee * * * *may* make and file a recommendation." (Emphasis added.) The statute also provides that the Secretary shall make an appointment when the committee fails to make a recommendation.

{¶ 131} The law anticipates and allows the secretary of state to make appointments to boards of elections without a recommendation of the county executive committee. A grant of mandamus in this case must presuppose the absolute necessity of participation by county executive committees. There is no statutory support for that.

**The Operation of R.C. 3501.07**

{¶ 132} R.C. 3501.07 provides:

{¶ 133} "At a meeting held not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections, or within fifteen days after a vacancy occurs in the board, the county executive committee of the major political party entitled to the appointment may make and file a recommendation with the secretary of state for the appointment of a qualified elector. The secretary of state shall appoint such elector, unless he has reason to believe that the elector would not be a competent member of such board. In such cases the secretary of state shall so state in writing to the chairman of such county executive committee, with the reasons therefor, and such committee may either recommend another elector or may apply for a writ of mandamus to the supreme court to compel the secretary of state to appoint the elector so recommended. In such action the burden of proof to show the qualifications of the person so recommended shall be on the committee making

the recommendation. If no such recommendation is made, the secretary of state shall make the appointment."

{¶ 134} There is no ambiguity in how R.C. 3501.07 works. R.C. 3501.07 prescribes the following procedure for committee recommendations of elections board members when a member's term of office is about to expire:

{¶ 135} 1. The county executive committee of the political party entitled to the appointment may make and file a recommendation with the secretary of state for the appointment of a qualified elector if it does so at a meeting held not more than 60 nor less than 15 days before the expiration date of the term of office.

{¶ 136} 2. The secretary shall appoint the recommended elector, unless the secretary has reason to believe that the elector would not be a competent member of the board.

{¶ 137} 3. If the secretary has reason to believe that the elector would not be competent, the secretary must give written reasons to the chairman of the committee.

{¶ 138} 4. The committee may either recommend another elector or apply to this court for a writ of mandamus to compel the secretary of state to appoint the recommended elector. In the case of a writ of mandamus, the committee has the burden to prove the qualifications of the recommended elector.

{¶ 139} 5. If no such recommendation is made, the secretary of state shall make the appointment.

{¶ 140} The plain language of R.C. 3501.07 does not specify any duty on the part of the secretary of state to appoint the *second* elector recommended by a county executive committee. Instead, the statute requires that the Secretary support by written reasons the rejection of the *first* elector recommended by the committee. Moreover, once the committee forgoes the mandamus option regarding the first recommendation, R.C. 3501.07 grants no right to the committee to assert it in regard to the second recommendation; the statute specifies mandamus in this court as the appropriate remedy to challenge the Secretary's rejection of the *first* recommendation, but it is silent about the availability of that action to challenge the Secretary's rejection of a *successive* committee recommendation.

{¶ 141} This court has held that the participation of the county executive committee in the appointment process is not mandatory and that the committee has a limited opportunity to make a recommendation. Although a committee may seek a writ of mandamus on its original recommendation, the committee's power to recommend effectively ends at the point it seeks mandamus. *State ex rel. Pike Cty. Republican Executive Commt. v. Brown* (1989), 43 Ohio St.3d 184, 540 N.E.2d 245. When the mandamus action is filed, either this court finds that the recommended elector was indeed qualified and the Secretary must appoint

him, or this court finds in favor of the Secretary and the committee has no further authority to recommend a different elector. As this court held in *Pike Cty.*:

{¶ 142} "If the committee's first choice is not appointed, the committee may *either* make another recommendation *or* it may file for a writ of mandamus. R.C. 3501.07 does not allow the committee to make a second recommendation *in addition* to filing for a writ of mandamus." (Emphasis sic.) *Pike Cty.*, 43 Ohio St.3d at 185, 540 N.E.2d 245.

{¶ 143} Thus, when the court finds in favor of the Secretary in the mandamus action, the committee has no authority to make a second recommendation; the Secretary makes the replacement appointment on her own, without having to consider a recommendation from the committee.

{¶ 144} R.C. 3501.07's alternative to a mandamus action upon the Secretary's rejection of the first recommendation is for the committee to make another recommendation. The seeming attractiveness of the second-recommendation option is a relatively quick decision as to the elector's appointment, as opposed to a potentially time-consuming mandamus action.

{¶ 145} By not allowing the committee to make another recommendation after a mandamus action is filed, R.C. 3501.07 prevents a committee from making an unlimited number of recommendations to the secretary of state. Under the committee's suggested interpretation, a committee could continue to make recommendations and the secretary of state could refuse to appoint those recommended electors ad infinitum. That would effectively remove from the Secretary the power to appoint. The statute prevents that scenario by limiting the number of recommendations the committee can make.

{¶ 146} R.C. 3501.07 is complementary to the rest of Ohio's statutory scheme regarding the secretary of state. Interpreting the statute to give a committee only one opportunity to choose between filing a mandamus action and making another recommendation prevents a merry-go-round of recommendations and refusals, and allows the Secretary to achieve finality in her appointments, so that the members, who are, after all, her representatives, may carry on the important work of the boards of elections. It also gives the committee an opportunity to defend before an impartial tribunal its first recommendation.

{¶ 147} Had the General Assembly intended a repeating procedure, it could have easily included it in R.C. 3501.07. In fact, when the General Assembly has intended to set forth statutory requirements upon a second rejection of a particular thing, it has done so. For example, R.C. 125.52 provides a procedure for a first rejection of bids on certain government contracts; R.C. 125.53 specifies the procedure for a *second* rejection. If the General Assembly had determined that a balancing of the various policy interests warranted application of the

statutory procedure to successive committee recommendations, it would have specified that application in R.C. 3501.07. See *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 46. It did not do so.

## The Concurrences

{¶ 148} Justice O'Donnell's concurrence ignores R.C. 3501.05, which states that the secretary of state shall make all appointments to boards of elections. The concurrence states that R.C. 3501.07 does not authorize the Secretary to reject the committee's second recommendation. However, the statute also does not direct the Secretary to appoint the recommended elector absent a finding of incompetence, as it does with the first recommended elector. Even if the Secretary were somehow powerless to reject the recommendation, the committee's recommendation could never be more than a *recommendation*. The power to *appoint* belongs to the Secretary pursuant to R.C. 3501.05. How could that power default to the committee without the default being mentioned in the statute? How could the power to *recommend* be stretched to mean that the committee has the power to appoint? It could not, absent a rewriting of the statute.

{¶ 149} Justice O'Donnell's concurrence states that "[t]he procedure in R.C. 3501.07 is comparable to the gubernatorial appointment procedure for members of the board of directors of the Bureau of Workers' Compensation and for the commissioners of the Public Utilities Commission." ¶ 35. Actually, the statutes the governor must follow in making those appointments, R.C. 4121.12 and 4901.02, set forth a completely different appointment process from that set forth in R.C. 3501.07, and place upon the governor a clear legal duty. Pursuant to R.C. 4121.12 and 4901.02, the governor *must* make the appointments from a list of names submitted by the pertinent nominating entity. The participation of the nominating entities is mandatory; under R.C. 3501.07, the participation of the county executive committees is permissive. Also, although R.C. 4121.12 and 4901.021 allow the governor to seek a second list of names from the nominating entity, the governor has no further recourse; the statutes explicitly require the governor to appoint a person from either of the two lists. R.C. 3501.07 lacks any explicit requirement of the secretary to appoint the second elector recommended by the county executive committee. R.C. 4121.12 and 4901.02 present good examples of what R.C. 3501.07 could have been, but isn't.

{¶ 150} Justice Cupp's concurrence recognizes the right of the Secretary to reject the committee's second recommendation, but would give the committee an additional chance to seek mandamus in this court. His concurrence states that "[t]o foreclose a mandamus challenge at this juncture would remove both of the statutory remedies granted to a political party executive committee to ensure

meaningful participation in the selection of the board member to which that party is entitled: challenging the Secretary's rejection of its second candidate or recommending someone else from its party to serve as a board member for that party." ¶ 87.

{¶ 151} To the contrary, the committee itself refused the remedy of mandamus. It had two choices upon the Secretary's rejection of Arshinkoff: file a mandamus action or make another recommendation. The committee declined to seek mandamus regarding its first, and presumably best, recommended elector. It had the right to argue before this court why Arshinkoff was indeed competent to serve. It chose not to assert its right to do so. The statute is not written to allow the committee to assert that right some other time—time is of the essence in the process of appointing boards of elections. The committee blew its one chance.

{¶ 152} Instead, the committee chose a route that did not include mandamus—it chose to recommend a second elector. Although the Secretary did not choose to appoint that recommended elector, R.C. 3501.06 guaranteed equal participation by both political parties. The Secretary remained statutorily bound to appoint a Republican to the board.

**Failure to File Second Recommendation Within the Time Specified in R.C. 3501.07**

{¶ 153} Even assuming that the Secretary's rejection of the committee's first recommendation restarted the statutory procedure set forth in R.C. 3501.07 once the committee decided to submit a second recommendation, the committee's mandamus claim still fails. If the statutory process starts over again, it does so in toto. The second recommendation was not made at a committee meeting within the time specified in R.C. 3501.07: "not more than sixty nor less than fifteen days before the expiration date of the term of office of a member of the board of elections." The committee made and filed its recommendation of Daley with the secretary of state on February 26, which was less than the 15 days specified in R.C. 3501.07 before the expiration of Arshinkoff's board of elections term for the committee to submit a timely recommendation. Thus, the secretary of state did not have any duty to provide written reasons for rejecting Daley, and the committee did not have a right to bring the mandamus action specified in the statute in this court to challenge the Secretary's rejection.

{¶ 154} The committee relies on the Secretary's supposed 21–day delay in ruling on its first recommendation to support its argument that the statute should not include a time requirement on successive recommendations. This argument ignores the committee's own *30–day delay* in submitting its *first* recommendation to the Secretary. Under R.C. 3501.07, the committee could have submitted its first recommendation as early as 60 days before the expiration of Arshinkoff's

term of office, but it waited until 31 days before the February 29, 2008 expiration of his term to submit its recommendation that the Secretary reappoint Arshinkoff. In fact, there is *no evidence* in the record that the Secretary deliberately delayed her determination on the committee's first recommendation so as to prevent the committee from exercising its rights under R.C. 3501.07. Instead, if anything, the Secretary afforded the Committee *more* rights than it was entitled to under the statute by providing a letter detailing reasons for her rejection of the committee's second recommendation, although the statute did not require her to do so.

**Conclusion**

{¶ 155} Legislative silence does not equate to a clear legal duty or to a clear legal right. Neither concurrence is tenable without adding language to R.C. 3501.07. R.C. 3501.07 does not require additional language to meet the General Assembly's purpose. As written, it provides for the bipartisan make-up of boards of elections, gives county executive committees input into appointments, gives the Secretary the power to refuse to appoint an incompetent elector, and gives the committee the opportunity to appeal the Secretary's refusal to this court or to make another recommendation. It sets forth an appeal right as to only the first recommendation, thus ensuring a quicker process in making the time-sensitive appointments to the boards of elections.

{¶ 156} Because R.C. 3501.07 imposes no duty upon the secretary of state to appoint Daley under the circumstances present in this case, the court should deny the writ. Because the court does not do so, I dissent.

MOYER, C.J., and LANZINGER, J., concur in the foregoing opinion.

---

Grendell & Simon Co., L.P.A., and Timothy J. Grendell, for relator.

Nancy Hardin Rogers, Attorney General, and Richard N. Coglianese, Damian W. Sikora, Pearl M. Chin, and Michael J. Schuler, Assistant Attorneys General, for respondent.